UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MARGARET GARZA LARA,<br><br>  Plaintiff,<br><br>  v.<br><br>CAROLYN W. COLVIN, Commissioner of Social Security,<br><br>  Defendant. | Case No. C13-931-MJP-BAT<br><br>**REPORT AND RECOMMENDATION** |

Margaret Garza Lara seeks review of the denial of her Supplemental Security Income and Disability Insurance Benefits applications. She contends the ALJ erred by (1) improperly rejecting certain medical opinions; (2) improperly discounting her credibility; and (3) failing to account for all of her limitations in the residual functional capacity ("RFC") assessment and vocational expert ("VE") hypothetical. Dkt. 17 at 2. As discussed below, the Court recommends **AFFIRMING** the Commissioner's final decision and **DISMISSING** the case.

## BACKGROUND

Ms. Lara is currently 58 years old, graduated from high school and has six months of vocational college education, and has worked as a cashier, caregiver, bill collector, retail

REPORT AND RECOMMENDATION - 1

assistant manager, and receptionist.[1]  On March 5, 2010, she applied for benefits, alleging disability as of May 23, 2008.  Tr. 144-52.  Her applications were denied initially and on reconsideration.  Tr. 70-85, 87-97.  The ALJ conducted a hearing on July 26, 2011 (Tr. 32-41), and November 21, 2011 (Tr. 42-65), and subsequently found Ms. Lara not disabled.  Tr. 12-26.  As the Appeals Council denied Ms. Lara's request for review, the ALJ's decision is the Commissioner's final decision.  Tr. 1-6.

## THE ALJ'S DECISION

Utilizing the five-step disability evaluation process,[2] the ALJ found:

**Step one:**  Ms. Lara had not engaged in substantial gainful activity since May 23, 2008.

**Step two:**  Ms. Lara's fibromyalgia; lumbar spine degenerative disc disease; degenerative joint disease; scoliosis; ischemic heart disease; osteoarthritis of the bilateral hips and sacroiliac joints; asthma; and obesity are severe impairments.

**Step three:**  These impairments did not meet or equal the requirements of a listed impairment.[3]

**RFC:**  Ms. Lara can perform sedentary work.  She can lift ten pounds occasionally and less than ten pounds frequently; stand and/or walk at least two hours in an eight-hour workday; and sit for about six hours in an eight-hour workday.  She should avoid concentrated exposure to extreme cold and extreme heat.  She should avoid concentrated exposure to vibration, and should avoid even moderate exposure to fumes, odors, gases, poor ventilation, and hazards.

**Step four:**  Ms. Lara can perform her past work as a receptionist, and is therefore not disabled.

Tr. 12-26.

## DISCUSSION

**A.   Medical Opinions**

Ms. Lara assigns error to the ALJ's assessment of opinions provided by two treating

---

[1] Tr. 46-47, 178, 214.
[2] 20 C.F.R. §§ 404.1520, 416.920.
[3] 20 C.F.R. Part 404, Subpart P, Appendix 1.

nurse practitioners, Catherine Amundson, ARNP, and Alaro Lawson, ARNP.  Nurse practitioners are considered "other medical sources,"[4] whose opinions must be considered by the ALJ and can be rejected only upon providing germane reasons.  *See Molina v. Astrue*, 674 F.3d 1104, 1114 (9th Cir. 2012).  The Court will address each provider's opinion in turn.

**1.     Ms. Amundson**

Ms. Amundson completed a DSHS form regarding Ms. Lara's impairments in October 2009, during Ms. Lara's first appointment with her, opining that she has a limited range of motion in her back and low back pain, and that her ability to work was "severely limited" because she could not sit, stand, walk, lift, carry, balance, bend, climb, crouch, kneel, pull, push, or reach.  Tr. 278-84.  She indicated that the limitations would be expected to last three months without medical treatment, and that she recommended an x-ray series and a surgical consult as treatment "to improve employability."  Tr. 281.

Ms. Lara did go on to receive x-rays, which revealed moderate levoscoliosis, mild to moderate multilevel degenerative disc disease, moderate bilateral L5-S1 facet arthropathy, and mild to moderate bilateral hip osteoarthritis.  Tr. 283.  X-rays also revealed moderate bilateral sacroiliac joint sclerosis, with no indication of an inflammatory process.  Tr. 284.  The ALJ reasoned that these mild and moderate findings were inconsistent with Ms. Amundson's opinion that Ms. Lara's ability to work was "severely limited." Tr. 24-25.  The ALJ also noted that Ms. Lara experienced improvement with subsequent treatment such as facet injections, which suggests that Ms. Amundson's initial evaluation did not accurately reflect the severity of Ms. Lara's impairments.  Tr. 24.

The ALJ further inferred that Ms. Amundson relied on Ms. Lara's subjective complaints

---

[4] *See* 20 C.F.R. §§ 404.1513(a) and (e), 416.913(a) and (e).

REPORT AND RECOMMENDATION - 3

in rendering her opinion — given that it was (1) inconsistent with the record, (2) not supported by concurrent clinical notes, and (3) rendered without the benefit of access to prior medical records — and thus unreliable to the extent that she accepted Ms. Lara's non-credible self-report. Tr. 25.

Finally, the ALJ also found that Ms. Amundson's opinion was inconsistent with Ms. Lara's description of her daily activities, which include sitting for most of the day, walking her dog, cleaning her house, caring for her granddaughter, grocery shopping alone, and using a backpack to carry items. Tr. 25.

All of the ALJ's reasons are germane reasons to discount Ms. Amundson's opinion. Ms. Lara argues that Ms. Amundson's opinion was based on her "complaints, her medical history, her medications, her evaluations, and the x-ray results," and thus should not have been discounted. Dkt. 17 at 13. This argument is not entirely accurate, however, because Ms. Amundson rendered her opinion during her first visit, before the x-rays were ordered (Tr. 283-84), and without mentioning any previous treatment or responses to treatment (Tr. 279) or medications. Because the ALJ provided a number of germane reasons supported by the record to discount Ms. Amundson's October 2009 opinion, the ALJ's assessment should be affirmed.

**2.      Mr. Lawson**

Mr. Lawson completed a DSHS form in September 2011, opining that Ms. Lara could stand or sit for 2-4 hours each during an 8-hour workday, and that she could frequently lift/carry a maximum of ten pounds. Tr. 613-14. The ALJ discounted this opinion because it conflicts with Ms. Lara's report of sitting nearly all day, and because Mr. Lawson's own exam findings in August 2011 (Tr. 619-20) indicate that she had full musculoskeletal range of motion, with intact motor strength and sensation. Tr. 24. The ALJ also noted that, despite the fact that Mr. Lawson

REPORT AND RECOMMENDATION - 4

1  had been treating Ms. Lara for over a year, he indicated that Ms. Lara's condition was expected
2  to impair her work function for only 90 days.  Tr. 24.

3  Ms. Lara challenges the ALJ's reasoning on the grounds that Mr. Lawson's August 2011
4  exam notes should not be taken out of the context of her longstanding treatment relationship with
5  him, but she does not identify any other notes of record that would corroborate his September
6  2011 opinion.  Dkt. 17 at 13.  Furthermore, she posits that Mr. Lawson's 90-day limitation is a
7  sign of "honesty" that "supports his opinion that Ms. Lara is limited to sitting for 2 to 4 hours in
8  a work day." *Id*.

9  Neither of Ms. Lara's arguments here establish that the ALJ's reasons are not germane.
10 She has failed to show that Mr. Lawson's notes overall support his opinion, or to establish that
11 the ALJ was unreasonable in interpreting Mr. Lawson's 90-day restriction as undermining the
12 value of his opinion as it relates to establishing a disabling impairment.  *See Morgan v. Comm'r*
13 *of the Social Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999) ("Where the evidence is susceptible
14 to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.").
15 Because the ALJ provided germane reasons to discount Mr. Lawson's opinion, the ALJ's
16 assessment of the opinion should be affirmed.

17 **B.      Credibility**

18 The ALJ provided a number of reasons to discount the credibility of Ms. Lara's
19 subjective testimony, namely (1) inconsistent objective medical evidence; (2) improvement with
20 medications; (3) failure to report certain symptoms to providers; (4) inconsistent daily activities
21 (including caring for her granddaughter seven hours per day five days per week, making her bed,
22 cooking, completing household chores, grocery shopping alone, engaging in hobbies, spending
23 time with others, using the computer, playing games, reading, watching television, caring for a

REPORT AND RECOMMENDATION - 5

pet dog, and sitting for most of the day); (5) providers' recommendations that Ms. Lara increase her activity level (as opposed to finding her unable to undertake physical activity); and (6) her receipt of unemployment benefits during some of the relevant period. Tr. 20-22. Ms. Lara contends that the ALJ erred in discounting her credibility without providing clear and convincing reasons. *See Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007).

      1.      **Factual Disputes**

Ms. Lara challenges some of the ALJ's findings as inaccurate, specifically related to her babysitting schedule and the time period during which she received unemployment benefits, and contends that the other reasons are not sufficiently persuasive. It is true that Ms. Lara testified that she babysat her granddaughter on Mondays and Fridays (not Monday-Friday, as the ALJ found). Tr. 55, 58. This inaccuracy does not negate the overall credibility determination, and thus amounts to harmless error, because the ALJ provided a number of other valid reasons to discount Ms. Lara's credibility. *See Carmickle v. Comm'r of Social Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008).

Ms. Lara's second factual dispute — that the ALJ erred in finding that she had received unemployment benefits during the relevant period — does not account for the entire record. *See, e.g.*, Tr. 316 (May 2009 record indicating that Ms. Lara brought documentation of unemployment compensation to an appointment for use as proof of income for a medication application), 348-39 (December 2008 record indicating that Ms. Lara received unemployment compensation September 2008-January 2009, and was therefore ineligible for DSHS medical benefits because she was not disabled). Thus, the ALJ did not inaccurately summarize the record as it relates to Ms. Lara's receipt of unemployment benefits. Tr. 22.

REPORT AND RECOMMENDATION - 6

### 2. Inconsistent Medical Evidence

The ALJ cited a number of medical records indicating that Ms. Lara's pain was not as severe as alleged.  *See* Tr. 20-21 (citing Tr. 484 (October 2009 treatment note indicating that although Ms. Lara reported constant pain, which increased with sitting, walking, and running, she had a normal gait and was able to sit erect in no apparent distress), Tr. 480 (March 2010 treatment note indicating that Ms. Lara's fibromyalgia symptoms were improved with medication), Tr. 479 (April 2010 treatment note indicating that Ms. Lara's chronic pain was "much improved" due to facet injections), Tr. 620 (August 2011 treatment note indicating that Ms. Lara had a full musculoskeletal range of motion (except in her left ankle, due to pain))).

Although Ms. Lara disputes whether one of the ALJ's other citations actually undermines her credibility (Dkt. 17 at 16 (citing Tr. 267-68)), she does not challenge the bulk of the ALJ's interpretation of the medical record as inconsistent with her allegations of pain, due to the evidence of improvement and lack of functional impairment, which are valid reasons to discount a claimant's credibility. *See Carmickle*, 533 F.3d at 1161 ("Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony."); *Tommasetti v. Astrue*, 533 F.3d 1035, 1039-40 (9th Cir. 2008) (holding that a claimant's improvement with conservative treatment undermines the credibility of his allegations of disabling pain). Ms. Lara cites evidence showing that she continued to receive treatment, even after experiencing some improvement, but this evidence does not establish that the treatment was not effective or that any particular functional limitations remained. Dkt. 17 at 16 at 17 (citing Tr. 481, 560, 586-87).

Ms. Lara also challenges the ALJ's interpretation of evidence that her providers encouraged her to increase her physical activity: according to the ALJ, this evidence undercuts Ms. Lara's testimony that she did not exercise because her impairments prevented her from

doing so.  Tr. 21-22.  Ms. Lara argues that her impairments "interfered with her ability to exercise" and thus the "ALJ erred in determining Ms. [Lara] noncompliant as she failed to consider possible reasons for this behavior."  Dkt. 17 at 17.  But the ALJ did not find Ms. Lara to be noncompliant; she found that although Ms. Lara stated that her impairments render her unable to exercise (see, e.g., Tr. 163), her providers apparently did not agree because they instructed her to increase her physical activity.  *See* Tr. 324, 378, 480.  The ALJ reasonably found that the inconsistency between Ms. Lara's providers' recommendations and Ms. Lara's testimony undermined the credibility of Ms. Lara's complaints.

### 3. Daily Activities

Finally, Ms. Lara challenges the ALJ's interpretation of her daily activities, contending that none of the activities cited by the ALJ actually indicate that she can work full-time.  Dkt. 17 at 18-19.  The ALJ did not cite Ms. Lara's activities as evidence that she can work full-time, but as evidence that contradicts her allegations.  Specifically, Ms. Lara told a provider in May 2008 that she sits on the couch all day and is "up and around about 15 minutes a day" (Tr. 265), and the ALJ found that this statement undermines her testimony that "she cannot sit for prolonged periods."  Tr. 21.  The ALJ also found that Ms. Lara's ability to participate in activities including sewing, playing board games, and going to the movies (Tr. 196) contradict her alleged sitting limitations.  Tr. 21.  The ALJ also cited evidence that Ms. Lara can *inter alia* cook, complete household chores, grocery shop, visit thrift stores, and walking her dog multiple times a day as inconsistent with her testimony that she "cannot stand for more than five to seven minutes."  Tr. 21.  The ALJ reasonably interpreted Ms. Lara's activities as inconsistent with her allegations, and thus properly discounted her credibility on that basis.  *See Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (indicating that an ALJ may rely on a claimant's daily activities to discount

REPORT AND RECOMMENDATION - 8

credibility if the activities are inconsistent with testimony regarding symptoms).

Because the ALJ provided a number of clear and convincing reasons to discount Ms. Lara's credibility, her adverse credibility determination should be affirmed.

**C.    RFC**

Ms. Lara reiterates previously addressed and rejected arguments regarding the sufficiency of the ALJ's RFC assessment. Dkt. 17 at 19-20. Because the Court finds that the ALJ did not err in discounting the opinions of Ms. Amundson and Mr. Lawson, Ms. Lara cannot establish that the ALJ erred in failing to incorporate their opinions in her RFC assessment. *See Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175-76 (9th Cir. 2008).

## CONCLUSION

For the foregoing reasons, the Court recommends that the Commissioner's decision be **AFFIRMED** and the case be **DISMISSED.** A proposed order accompanies this Report and Recommendation. Objections, if any, to this Report and Recommendation must be filed and served no later than **December 11, 2013.** If no objections are filed, the matter will be ready for the Court's consideration on **December 13, 2013**. If objections are filed, any response is due within 14 days after being served with the objections. A party filing an objection must note the matter for the Court's consideration 14 days from the date the objection is filed and served. Objections and responses shall not exceed twelve pages. The failure to timely object may affect the right to appeal.

DATED this 27th day of November, 2013.

BRIAN A. TSUCHIDA
United States Magistrate Judge

REPORT AND RECOMMENDATION - 9